UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

For Publication

———————————————————
                                              :
In re                                         :
                                              :
WORLDCOM, INC., *et al.,*                      :
                                              :
        Reorganized Debtors.                  :

———————————————————
                                              :
MCI, Inc. and                                 :
MCI WorldCom Network Services, Inc.,          :
                                              :
        Plaintiffs,                           :
                                              :
        v.                                    :
                                              :
Duane G. West,                                :
                                              :
        Defendant.                            :

———————————————————

Chapter 11 Case No.
02-13533 (AJG)

(Jointly Administered)
(Confirmed)


Adv. Proc. No.
03-93824

**OPINION REGARDING MOTION FOR SUMMARY JUDGMENT FILED BY
DEBTORS AND CROSS-MOTION FOR SUMMARY JUDGMENT FILED BY DUANE
G. WEST REGARDING DEBTORS' COMPLAINT AGAINST DUANE G. WEST**

A P P E A R A N C E S :

WEIL, GOTSHAL & MANGES LLP
Attorneys for Reorganized Debtors
767 Fifth Avenue
New York, NY  10153-0119

        Marcia L. Goldstein, Esq.
        Lori R. Fife, Esq.
        Alfredo R. Perez, Esq.
        Adam P. Strochak, Esq.
                Of Counsel

JENNER & BLOCK LLP
Special Counsel to Reorganized Debtors
601 13th Street, N.W.
Washington, DC  20005

        David A. Handzo, Esq.

J. Alex Ward, Esq.
        Of Counsel

SOMMER BARNARD ATTORNEYS, PC
Attorneys for Duane G. West
One Indiana Square, Suite 3500
Indianapolis, IN  46204-2023

        Paul T. Deignan, Esq.
        Andrew T. Kight, Esq.
        David J. Bayt, Esq.
            Of Counsel

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

    The matter before the Court involves motions for summary judgment regarding whether

(1) claims of trespass, unjust enrichment, and unconstitutional taking from the presence,

maintenance, and use of fiber optic cable in certain railroad rights of way, post-effective date of

the confirmation plan, are "claims" as that term is defined in 11 U.S.C. § 101(5), (2) the liability,

if any, for such claims is discharged pursuant to 11 U.S.C. 1141 (d)(1)(A) and the confirmation

order, and (3) such discharge, if any, operates as an injunction against the continuation or

commencement of any action at law or equity for such claims pursuant to 11 U.S.C. §524(a)(2)

and the confirmation order.

## I.  Jurisdiction

    The Court has subject matter jurisdiction over this proceeding pursuant to sections 1334

and 157(b) of title 28 of the United States Code, under the July 10, 1984 "Standing Order of

Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern

District of New York (Ward, Acting C.J.), and under paragraph 32 of this Court's Order

Confirming Debtors' Modified Second Amended Joint Plan of Reorganization under chapter 11

of title 11 of the United States Code (the "Bankruptcy Code") (Oct. 31, 2003).  This is a core

proceeding pursuant to section 157(b)(2)(I) and (O) of title 28 of the United States Code.  Venue

is properly before this Court pursuant to sections 1408 and 1409 of title 28 of the United States

Code.

## II.  Background

### A.  The Debtors

MCI WORLDCOM Network Services, Inc. ("MWNS") owns an extensive nationwide

fiber optic network that provides telecommunications services to the general public.  A

substantial portion of MWNS's fiber optic network is buried within railroad rights of way.

MWNS owns fiber optic cables within CSX Transportation, Inc.'s ("CSX") right of way within

Polk County, Georgia.  In December 1982, MCI Telecommunications Corp. ("MCIT"), a

predecessor to MWNS, entered into an agreement with CSX to install fiber optic cable within the

CSX right of way.  In 1986, MCIT installed fiber optic cable within the CSX right of way that is

adjacent to Duane G. West's ("West") property.  Pursuant to the terms of the agreement between

CSX and MCIT, CSX can use a small percentage of the fiber optic capacity for switching,

dispatching, and communications purposes in connection with its rail operations.[1]

On July 21, 2002 (the "Commencement Date") and November 8, 2002, WorldCom, Inc.

and certain of its direct and indirect subsidiaries[2] (collectively, the "Debtor") commenced cases

under the Bankruptcy Code.  By orders dated July 22, 2002 and November 12, 2002, the

Debtor's chapter 11 cases were consolidated for procedural purposes.  During the chapter 11

cases, the Debtor had been operating its businesses and managing its properties as debtor in

possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

---

[1]  West disputes whether in fact, CSX used such small percentage in connection with its rail operations.
[2]  MWNS and MCIT were subsidiaries included in WorldCom, Inc.'s bankruptcy proceeding.

On July 29, 2002, the United States Trustee formed the Official Committee of Unsecured Creditors (the "Committee") of the Debtor.

On October 21, 2003, the Debtors filed their Modified Second Amended Joint Plan of Reorganization under the Bankruptcy Code (the "Plan"). By order dated October 29, 2002, this Court established January 23, 2003 as the deadline for the filing of a proof of claim against the Debtor (the "Bar Date"). By order dated October 31, 2003, the Court confirmed the Debtor's Plan (the "Confirmation Order"), which became effective on April 20, 2004 (the "Effective Date"). Upon the Effective Date, the Debtor became MCI WorldCom Communications, Inc. ("MCI").

## B.  Duane G. West

West is a citizen of the State of Georgia. It undisputed that West owns three parcels of real estate in Polk County, Georgia. However, the parties dispute whether West has a fee interest in the railroad rights of way where the fiber optic cable is buried.

West is the sole named plaintiff in a putative class action lawsuit captioned *West v. MCI Communications Corp.,* C.A. No. 98-9912, filed in Superior Court of the District of Columbia on December 31, 1998 (the "West Lawsuit"). In the West Lawsuit, West, on behalf of himself and a putative nationwide class of similarly-situated landowners, alleged claims of trespass, slander of title, and unjust enrichment, and sought a declaratory judgment and punitive damages on account of the Debtor's installation of fiber optic cable along railroad rights of way that border real property allegedly owned by the landowners. The West Lawsuit does not assert a claim for ejectment or for any other form of equitable relief.

The West Lawsuit alleges that the Debtor installed fiber optic cable along railroad rights of way pursuant to agreements with the railroads, but without the consent of adjoining

landowners such as himself.  West further alleges that the railroads lacked authority to consent to

the installation because the railroads do not always own their rights of way in fee.  West claims

that the landowners whose property adjoins the rights of way are the owners of the fee interest in

the right of way, and it was their consent, rather than the consent of the railroads, that was

required in order to authorize the Debtor's fiber optic cable installation.

On March 31, 1999, West moved for certification of a nationwide class in the West

Lawsuit pursuant to Rule 23 of the District of Columbia's Superior Court Rules of Civil

Procedure, asking the court to certify a class consisting of

> All owners, other than the United States Government or the
> government of any state, of land in the United States or adjacent to
> a railroad corridor on which Defendants have entered to install,
> maintain, or operate a fiber-optic or other telecommunications
> cable without obtaining the consent of the owner of the land.

A decision on the class certification motion was pending when the Debtor filed its chapter 11

petitions, which triggered the automatic stay.  West did not file a proof of claim in the Debtor's

bankruptcy proceeding.

On July 28, 2003, West filed a limited objection to confirmation of the Debtor's Plan (the

"West Limited Objection").  The West Limited Objection was resolved by stipulation and

agreement by and between the Debtor and West, dated October 16, 2003 (the "Stipulation").

The Stipulation was entered by the Court on November 4, 2003.

In the Stipulation, the parties agreed that, upon confirmation of the Plan, the Debtor

obtains a full and complete discharge of debts and claims to the extent provided in sections 1141

and 524 of the Bankruptcy Code.  In addition, the parties agreed that sections 10.01 through

10.04 of the Plan[3] pertain to any cause of action, right, or remedy West and any similarly situated

---

[3]  Sections 10.01 through 10.04 of the Plan provides, *inter alia*, that upon the Effective Date, all property of the
estates of the Debtor shall vest in the Debtor free and clear of all claims; that all existing claims against the Debtor

landowners, in the West Lawsuit, may have against the Debtor with respect to the post-Effective Date presence of fiber optic cable in railroad rights of way insofar as it is determined that such cause of action, right, or remedy constitutes a claim, as defined by section 101(5) of the Bankruptcy Code, that arose prior to the Effective Date.

On December 24, 2003, the Debtor filed a complaint in this Court against West based upon West's stated intention in the Stipulation that he intends to seek a judicial remedy against the Debtor for post-Effective Date installation and use of the fiber optic cable (the "Complaint"). On January 29, 2004, West filed an answer and affirmative defenses to the Complaint.

On July 30, 2004, the Debtor filed a motion for summary judgment on the Complaint. On August 26, 2004, West filed a response to the Debtor's motion for summary judgment on the Complaint.  On September 2, 2004, West filed a cross-motion for summary judgment on the Complaint (hereinafter, collectively the Debtor's motion and West's cross-motion for summary judgment are the "Motions," and individually, "Motion").  On September 23, 2004, the Debtor filed a response to West's Motion.  Thereafter, on September 28, 2004, the Court held a hearing regarding the Motions.  This Opinion addresses the Motions.

### III.  Discussion

**A.  Parties' Contentions**

#### 1.  Debtor's Contentions

The Debtor contends that the West Lawsuit is without merit in that the Debtor denies that West owns a fee interest in the right of way bordering West's property.  In addition, the Debtor argues that the railroads had ample authority to license the use of their rights of way for

---

shall be discharged; and that all holders of all such claims shall be enjoined from asserting any other claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

telecommunications purposes regardless of whether the railroads held fee title or only an easement. [4]

Further, the Debtor argues that even if West could prevail on his trespass claim, Georgia's eminent domain law would permit the Debtor to take West's property upon the payment of just compensation. The Debtor argues that the compensation West would receive for a trespass claim would be precisely the same compensation under eminent domain. However, the Debtor also maintains that because West did not file a proof of claim, he has knowingly waived his right to seek compensation. Thus, West cannot assert a claim for unconstitutional taking based upon a lack of compensation.

The Debtor also argues that because all the actions by the Debtor which give rise to West's trespass claim occurred before the commencement of the bankruptcy case, any and all trespass claims are foreclosed by sections 101(5), 101(12), 524(a)(2), 1141(c), and 1141(d)(1)(A) of the Bankruptcy Code, and sections 10.02 – 10.04 of the Plan, including post-Effective Date requests for equitable relief and claims for damages allegedly arising after the Effective Date.

The Debtor seeks that the Court grant summary judgment in its favor and find that (1) any cause of action, right, or remedy West and any similarly situated landowners represented by West[5] may have against the Debtor with respect to the post-Effective Date presence of fiber optic cable installed prior to the Effective Date along railroad rights of way constitutes a "claim," as that term is defined in 11 U.S.C. § 101(5), that arose prior to the Effective Date, (2) any liability

---

[4] As a result of the conclusions of law made by the Court, herein, the Court will not address these allegations.
[5] West maintains that he is the only party against whom the Debtor may be entitled to relief from, as set forth in the caption. Thus, West maintains that it is inappropriate to have requested relief against "any similarly situated landowners represented by West." The Court notes that although it may appear that the relief requested in this Opinion would apply to similarly-situated landowners, to the extent that the Debtor requests such relief, it should bring such request in a separate proceeding before the Court.

on any such cause of action, right, or remedy has been discharged pursuant to 11 U.S.C. 1141(d)(1)(A) and the Confirmation Order, and (3) such discharge operates as an injunction against the commencement or continuation of any action at law or in equity arising out of the post-Effective Date presence of fiber optic cable installed prior to the Effective Date along railroad rights of way pursuant to 11 U.S.C. § 524(a)(2) and the Confirmation Order.

### 2.  West's Contentions

West concedes that any claim (as the term is defined in 11 U.S.C. § 101(5)) he had against the Debtor for their pre-petition trespass of burying the fiber optic cable without his consent was discharged by confirmation of the Plan.  However, West asserts that even though he has no right to damages arising out of the Debtor's pre-Effective Date installation of the fiber optic cable, he has a right to assert various causes of action arising out of the continuing presence and use of the fiber optic cable post-Effective Date and continuing, post-Effective Date, to come onto West's land without his consent to maintain the fiber optic cable.

West asserts that the alleged post-discharge conduct of the Debtor constitutes a continuing trespass, unjustly enriches the Debtor, and denies West the fundamental rights, incident to his ownership of his land to control the use of his property, and to exclude others from doing so.  West seeks summary judgment in his favor and for the Court to determine that the discharge received by the Debtor pursuant to 11 U.S.C. 1141(d)(1)(A), and the injunction imposed by 11 U.S.C. § 524 (a)(2) does not prohibit West from asserting his rights against the Debtor for wrongful conduct occurring post-Effective Date.

### B.  Summary Judgment Standard

The basic principles governing a motion for summary judgment are well settled.  Rule 56 of the Federal Rules of Civil Procedure (hereinafter, the "Rule"), made applicable to this

adversary proceeding by rule 7056 of the Federal Rules of Bankruptcy Procedure, governs

summary judgment motions.  Summary judgment may only be granted when there is no genuine

issue of material fact remaining for trial and the moving party is entitled to judgment as a matter

of law.  *See* FED. R. CIV. P. 56(c).  Rule 56(c) provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> a judgment as a matter of law.

A "genuine issue" exists "if the evidence is such that a reasonable jury could return a

verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A fact is "material" if it "might affect the outcome of the suit under governing law."  *Id.*  The

burden is upon the moving party to clearly establish the absence of a genuine issue as to any

material fact.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The Court, however,

must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the

non-moving party.  *See United States v. Rem*, 38 F.3d 634, 643 (2d Cir. 1994).  The movant can

meet its burden for summary judgment by showing that little or no evidence may be found to

support the nonmovant's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once a

movant has demonstrated that no material facts are genuinely in dispute, the nonmovant must set

forth specific facts indicating a genuine issue for trial exists in order to avoid granting of

summary judgment."  *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1990).

Thus, the nonmovant cannot escape summary judgment with mere conclusory

allegations, speculation, or conjecture.  *See id.*  The nonmovant, in fact, must do more than

simply show that there is some "metaphysical doubt" about the facts.  *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Therefore, if no reasonable jury could find

in favor of the nonmovant because evidence to support its case is slight, there is no genuine issue

of material fact and a grant of summary judgment is proper.  *See Gallo v. Prudential Residential*

*Servs. Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir. 1994).

## C.  Analysis

As stated previously, the Debtor asserts that West's causes of action relating to the pre-

bankruptcy installation of fiber optic cable are plainly discharged under 11 U.S.C. §

1141(d)(1)(A).  The Debtor further asserts that because a "debt" is defined as "liability on a

claim," *see* § 101(12), the effect of these two provisions is to discharge any liability on any

"claim," as its defined in section 101(5) of the Bankruptcy Code.  Thus, the Debtor maintains

that all of West's causes of action pre-bankruptcy and post-Effective Date will be discharged.

West argues that his causes of action are for events that occurred post-petition under a claim for

continuing trespass.  Thus, they are not "claims" as defined by § 101(5) and are not discharged.

Under the Bankruptcy Code, the confirmation of a plan of reorganization discharges the

debtor from any debt that arose before the date of confirmation.  11 U.S.C. 1141(d)(1)(A).  A

"debt" is defined as "liability on a claim." 11 U.S.C. § 101(12).  A "claim" is defined as a "right

to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,

contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or

right to any equitable remedy." 11 U.S.C. § 101(5).  The term "claim" is "sufficiently broad to

encompass any possible right to payment." *Mazzeo v. U.S. (In re Mazzeo),* 131 F.3d 295, 302

(2d Cir. 1997).  As noted by the Supreme Court, Congress intended the term "claim" to have the

broadest possible scope so that "all legal obligations of debtor . . . will be able to be dealt with in

a bankruptcy case." *LTV Steel Co., Inc. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 498

(2d Cir. 1995) ("*Chateaugay II*").

"[A] valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment, and (2) whether that right arose before the filing of the petition." *Id.* at 497. As stated in *Chateaugay II* "[a] claim will be deemed pre-petition when it arises out of a relationship recognized in, for example, the law of contracts or torts." *Id.* For purposes of bankruptcy, a claim arises when "the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation . . . under the relevant non-bankruptcy law." *Duplan Corp. v. Esso Virgin Islands, Inc.*, 212 F.3d 144, 151 (2d Cir. 2000) (citing *Chateaugay II* at 497). Thus, if West's claims arising from an alleged continuing trespass, unconstitutional taking, and unjust enrichment were "claims," pursuant to 11 U.S.C. 101(5), against the Debtor that existed prior to the filing of the Debtor's bankruptcy petition, then the liability on those claims would have been discharged pursuant to 1141(d)(1)(A) and the Confirmation Order and are now barred pursuant to 11 U.S.C. §524(a)(2) and the Confirmation Order.

## 1. Trespass and Continuing Trespass

The Court will assume for purposes of this Opinion that West owns a fee interest in the subject railroad rights of way, and his consent for the installation of the fiber optic cable was required. Essentially, the Debtor argues that the installation and use of the cable would, at best, constitute a permanent trespass for which West would only have a single cause of action for all past, present, and future damages. West argues that the presence, and use of the fiber optic cable is a continuing trespass, which is separate and distinct and did not arise pre-petition, and he further argues that the coming upon his land to maintain the cables is a continuing trespass.

Whether a trespass is permanent or continuous is a matter of state law. Bankruptcy law only determines when the particular elements under state law were present such that a claim would arise. As such, the Debtor argues that all of the elements that constituted the alleged

permanent trespass arose pre-petition. West contends that the elements constituting a continuing

trespass did not arise pre-petition but, rather, post-petition.

Under Georgia law "[t]respass means any misfeasance, transgression, or offense which

damages another's health, reputation, or property." GA. CODE ANN. § 1-3-3(20) (2004). A cause

of action for trespass to real estate is, "[t]he right of enjoyment of private property being an

absolute right of every citizen, every act of another which unlawfully interferes with such

enjoyment is a tort for which an action shall lie." GA. CODE ANN. § 51-9-1 (2004).

Here, the issue is whether the presence, maintenance, and use of the fiber optic cable in

the railroad rights of way constitutes a continuing trespass. Fiber optic cables are bundles of thin

strands of very pure glass or plastic that transmits light signals over long distances. Light signals

are transmitted through the strands by a laser or light emitting diodes and no electricity passes

through the cables. Craig C. Freudenrich, Ph.D, *How Fiber Optics Work*,

http://electronics.howstuffworks.com/fiber-optic.htm (accessed June 29, 2005).

### a. Presence and Maintenance of Fiber Optic Cable

### 1. Presence of Fiber Optic Cable

West argues that the continued presence of the fiber optic cable in the railroad rights of

way, post-Effective Date, without his consent is a continuing trespass under Georgia law, and is

not discharged. The Debtor maintains that under Georgia law, any claim West asserts based on

the continued physical presence of the cable is a permanent trespass, which arose pre-petition,

thus, it is discharged.

A permanent trespass is a "completed" trespass of a permanent nature; it is categorized as

one-act, where the bar of the statute of limitations would run from the time of its completion.

The Court agrees with the Debtor's argument that courts in Georgia "have consistently held that

the mere continued "existence" of an allegedly trespassing agent without additional injury does not transform a permanent trespass into a continuing trespass." *See, e.g., Smith v. Branch*, 487 S.E.2d 35, 38 (Ga. Ct. App. 1997) ("*Hoffman [v. Atlanta Gas Light Co.*, 206 Ga. App. 727 (Ga. Ct. App. 1992)] addressed the fact that the hazardous chemicals in that case were *continuing to spread*, causing 'fresh acts' of contamination, and nowhere implied that a mere continuing existence of old, completed contamination constituted a continuing nuisance or continuing trespass" (emphasis added)); *Davis Bros., Inc. v. Thornton Oil Co.*, 12 F. Supp. 2d 1333, 1338 (M.D. Ga. 1998) ("Plaintiff's arguments that the continued existence of contamination constitutes a continuing trespass or nuisance, or that the statute of limitations was tolled until the leak was discovered, have both been flatly rejected by Georgia courts in similar context.").

"All actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues." GA. CODE ANN. § 9-3-30 (2004). The Court agrees with the Debtor's contention that under Georgia law, any cause of action based upon the unauthorized installation of a permanent object upon another's land accrues upon the "completed act" of the installation. *See Robinson v. Dep't of Transp.*, 394 S.E.2d 590, 591 (Ga. Ct. App. 1990) ("[a]ny cause of action . . . accrued immediately upon the installation of the public works involved . . . ."); *Ga. Power Co. v. Moore*, 170 S.E. 520, 523 (Ga. Ct. App. 1933) ("[a] nuisance, permanent and continuing in its character, the destruction or damage being at once complete upon the completion of the act by which the nuisance is created, gives but one right of action, which accrues immediately upon the creation of the nuisance, and against which the statute of limitations begins, from that time, to run.").

Accordingly, installation of the fiber optic cable was a completed trespass, of a permanent nature that is categorized as one-act and not a continuing trespass. Since West only

13

asserts that the mere continued presence of the fiber optic cable on the property constitutes a

continuing trespass, and does not allege any additional injury to the property from the presence

of the fiber optic cable; the installation of the fiber optic cable constitutes a permanent trespass

and not a continuing trespass.  In addition, any cause of action based on the permanent trespass

accrued upon the installation of the fiber optic cable and such installation occurred pre-petition.[6]

Therefore, any cause of action related thereto was a "claim" pursuant to 11 U.S.C. 101(5)

of the Bankruptcy Code.  Accordingly, any liability resulting therefrom for past, present, and

future damages has been discharged pursuant to 11 U.S.C. 1141(d)(1)(A) and the Confirmation

Order.  Furthermore, such discharge would be an injunction against the commencement and

continuation of any such cause of action pursuant to 11 U.S.C. § 524(a)(2) and the Confirmation

Order.  Therefore, based on the above, the Debtor is granted summary judgment with respect to

this issue.

### 2.  Maintenance of Fiber Optic Cable

In addition, West asserts that the Debtor committed a continuing trespass by coming on

his land at various times, post-petition, without his consent to maintain the fiber optic cable,

post-petition.  The Debtor did not address this issue in its papers.

*Delta Air Corp. v. Kersey*, 20 S.E.2d 245 (Ga. 1942) involved an action to enjoin and

recover damages for operation and use of an airport.  Specifically, the plaintiff alleged that prior

to the construction of the airport, the property was quiet and peaceful but that dust, noises, and

low flying of airplanes caused by the operation of the airport rendered his property unsuitable for

a home.  The Georgia Supreme Court held that "[u]nder the allegations of the instant petition the

noise and dust complained of may be deemed to be *incidental* to the proper operation of an

---

[6]  The Court notes that the fiber optic cable was installed in the railroad rights of way in 1986; thus, such a claim for
permanent trespass would appear to be barred by the statute of limitations.

airport, and, as such, they cannot be said to constitute a nuisance." *Id.* at 248-49 (emphasis

added). Furthermore, in *Georgia R. & Banking Co. v. Maddox*, 42 S.E. 315 (Ga. 1902), the

Georgia Supreme Court held that "injuries and inconveniences to persons residing near such

works, from noises of locomotives, rumbling of cars, vibrations produced thereby, and smoke,

cinders, and soot, and the like, which result from the ordinary and necessary, and therefore

proper, use and conduct of such works, are not nuisances . . . ." *Id.* at 321.

      Although the instant case is for a claim of continuing trespass rather than nuisance, the

Georgia Supreme Court's reasoning would appear to be applicable, here, in that the conduct

complained of is incidental to the permanent trespass that resulted from the installation of the

fiber optic cable.  In that, maintenance of the fiber optic cable is ordinary and necessary to ensure

that the cable is functioning properly.  The mere fact that the Debtor went upon West's land for

such use is incident to the maintenance of the fiber optic cable and, as such, cannot constitute a

continuing trespass.

      Therefore, for the reasoning stated above, West's cause of action is grounded in a

permanent trespass.  A claim for permanent trespass would have accrued upon the installation of

the fiber optic cable, and such installation occurred pre-petition. [7]  Thus, any cause of action

related thereto was a "claim" pursuant to 11 U.S.C. 101(5) of the Bankruptcy Code.

Accordingly, any liability resulting therefrom for past, present, and future damages has been

discharged pursuant to 11 U.S.C. 1141(d)(1)(A) and the Confirmation Order.  Furthermore, such

discharge would be an injunction against the commencement and continuation of any such cause

of action pursuant to 11 U.S.C. § 524(a)(2) and the Confirmation Order.  Accordingly, based

upon the above, the Court grants summary judgment in favor of the Debtor with respect to this

issue.

---

[7] *See id.*

15

Further, even if the continued maintenance of the fiber optic cables was a continuing trespass, recovery for past, present, and future damages would have had to been brought in one single action pre-petition.

The RESTATEMENT (SECOND) OF TORTS § 930 (1979) (the "Restatement") provides as follows:

> (1) If one causes continuing or recurrent tortious invasions on the land of another by the maintenance of a structure or acts or operations not on the land of the other and it appears that the invasions will continue indefinitely, the other may at his election recover damages for the future invasions in the same action as that for the past invasions.
>
> (2) If the future invasions would not be enjoined because the defendant's enterprise is affected with a public interest, the court in its discretion may rule that the plaintiff must recover for both past and future invasions in the single action.

RESTATEMENT (SECOND) OF TORTS § 930.  Comment on Subsection (2) of section 930 states, in pertinent part, that

> the public interest, which actuates the courts to deny an injunction calculated to interfere with an essential public service, requires also that the utility enterprise be permitted, when sued for past invasions, to have the court ascertain and award complete compensation for the continuing injury, instead of awaiting successive actions.  This is most obviously true when the damage is a necessary incident of the lawful operation of the enterprise, in which case the allowance of full damages has the effect of the exercise of the power of eminent domain.  Even when, however, the damaging feature cannot be said to be authorized by law but it is incident to the use of the existing plant and not avoidable by reasonable effort or expense, the court may determine that the public convenience requires that the plaintiff submit to be compensated completely, once for all.

RESTATEMENT (SECOND) OF TORTS § 930, Comment on Subsection 2.

Here, the Debtor is a utility company, which provides a public service.  According to the Restatement, it appears that a claim for damages for a continuing trespass of the maintenance of

the fiber optic cable, which is incidental to the installation and use of the cable, would have to be

brought in one single action – with an action for trespass for the installation of the cable – pre-

petition for past, present, and future damages arising out of the alleged continuing trespass.

Thus, West would have one cause of action for any alleged continuing trespass incident thereto.

West cites to *O'Loghlin v. County of Orange*, 229 F.3d 871 (9th Cir. 2000) for the

proposition that the alleged continuing trespass is post-discharge conduct, therefore, it is not

discharged.  *Id.*  In *O'Loghlin*, the plaintiff, an employee, sued the defendant, Orange County, for

alleged violations of the Americans with Disabilities Act ("ADA").  The defendant claimed that

its bankruptcy discharge protected it from such claims.  The Ninth Circuit in *O'Loghlin* held that

the plaintiff's claims for pre-petition discriminatory violations of the ADA were discharged.  *Id.*

at 874.  However, the Ninth Circuit held that the plaintiff may recover for damages for the

defendant's alleged post-discharge continuing violation of the ADA's reasonable

accommodation provisions under two possible scenarios, despite the fact that the defendant had a

discharge in bankruptcy.  *Id.* at 876.  Under the first scenario, a plaintiff may recover for

damages "if the violation was sufficiently independent of the pre-discharge violations that it did

not constitute part of a continuing violation of the ADA" in which case the plaintiff could

recover damages beginning from the date of the violation.  229 F.3d at 876.  Under the second

scenario, a plaintiff may recover for damages "if the violation was so related to the pre-discharge

violations that the pre- and post-discharge conduct constitutes a continuing violation" which

would allow the plaintiff to recover from the date of discharge.  *Id.*

If *O'Loghlin* were applicable to the case at hand, it appears that West would be able to

recover damages under the second scenario since a continuing trespass claim is so related to the

pre-discharge trespass that the pre-and post-discharge conduct would constitute a continuing

trespass.  However, the facts and statutory basis in *O'Loghlin* are distinguishable from the instant

case, so as to compel a different result.  The primary distinction between the two cases is that

*O'Loghlin* was based on a violation of civil rights whereas the case at bar is based on a tort.

There are significant differences in the public policy considerations applicable to actions based

on civil rights as opposed to those based on tort.  There is a strong public policy to end a civil

rights violation as well as to compensate a victim of such violation and the relevant case law

does not discuss any countervailing policy considerations.  In contrast, trespass by a public utility

involves a countervailing policy consideration – specifically, the competing need of the public -

for the benefit provided by the public utility versus the right of a property owner to control the

use of his property.  States seem to address these conflicting policies by means of a

condemnation process in which a property owner receives fair consideration for the use of the

property while the public benefits from the utility's continued use of the property.  In essence, a

balance is struck between the needs of the public and the rights of a property owner.

   Here, the Debtor is a utility company that provides the public service of

telecommunications.  The Debtor's status as a utility company allows it to condemn a

landowner's property for public use.[8]  Of course, any condemnation of land for public use would

require the Debtor to provide just compensation to the landowner.  *See* Ga. Const., Art. I, § III,

Para. 1.  Under Georgia law, however, as will be discussed herein, only monetary damages can

be awarded for the condemnation of land for public use, and an equitable remedy, such as an

injunction, is not available.  *See* GA. CODE ANN. § 46-5-1 (2004).  To the contrary, due to the

alleged violations of the ADA, the plaintiff in *O'Loghlin* would have the option of obtaining

monetary and equitable relief.  Therefore, even if West could establish that the legal analysis in

---

[8]  Although, the Debtor has not exercised his power of condemnation, in this case, West does not dispute that the
Debtor has such power.

18

*O'Loghlin* should apply to a trespass, the Court finds that such analysis would not apply in the context of a public utility in a state that limits the property owner to money damages.

Moreover, in the instant case, it is clear that the alleged continuing trespass is so intertwined and incident to the installation of the fiber optic cable – the alleged permanent trespass – so as to clearly put West on notice that such alleged trespass would continue in the future, thus, such future damages were foreseeable. However, a distinction lies in the *O'Loghlin* case in that the plaintiff could not conceivably foresee that violation of the ADA would continue in the future.

Therefore, based upon the aforementioned analysis, the Court finds that even if Georgia law would consider the maintenance of the fiber optic cable a continuing trespass, it would follow the Restatement's view regarding the computation of future damages of a continuing violation because the "defendant's enterprise is affected with a public interest." RESTATEMENT § 930(2), Comment Subsection (2). The Restatement incorporates into its reasoning, as is relevant to the case at bar, the public interest in having a court ascertain a public utility's damages for a continuing injury in one action rather than having successive actions especially when the damage "is a necessary incident to its . . . operation." *Id*. Accordingly, the Court finds that the facts of this case compel that the future damages asserted by West, which are post-petition, be brought in one single action pre-petition.

Therefore, any cause of action related thereto was a "claim" pursuant to 11 U.S.C. 101(5) of the Bankruptcy Code. Accordingly, any liability resulting therefrom for past, present, and future damages has been discharged pursuant to 11 U.S.C. 1141(d)(1)(A) and the Confirmation Order. Furthermore, such discharge would be an injunction against the commencement and

continuation of any such cause of action pursuant to 11 U.S.C. § 524(a)(2) and the Confirmation

Order.

### b. Transmission of Light Pulses Through the Fiber Optic Cable

West also asserts that the transmission of the light pulses through the fiber optic cable,

post-Effective Date, constitutes a continuing trespass.  The Debtor contends that under Georgia

law, the intrusion of intangibles such as light does not give rise to a claim of trespass, at least in

the absence of some physical injury to the property.

In Georgia, "[a] claim for continuing trespass is predicated upon the happening of a

continuous series of 'events.'  Where a trespass is continuing in nature, a new cause of action

arises . . . ."  *City of Chamblee v. Maxwell*, 452 S.E.2d 488. 490 (Ga. 1994).  Further, a claim for

continuing trespass is subsumed within a claim for continuing nuisance.  *Briggs & Stratton Corp.*

*v. Concrete Sales & Servs., Inc.*, 971 F.Supp 566, 573 (M.D. Ga. 1997).  "A continuing nuisance

'is not permanent in its character, but is one which can and should be abated by the person

erecting or maintaining it.'"  If [it] is a continuing nuisance, every continuance of the nuisance is

a fresh nuisance for which a new action will lie."  *Benton v. Savannah Airport Comm'n*, 241 Ga.

App. 536, 540 (Ga. Ct. App. 1999).

The Court addressed the issue of whether the transmission of light pulses through fiber

optic cable constituted a continuing trespass in its memorandum opinion in *In re WorldCom*, 320

B.R. 772 (Bankr. S.D.N.Y. 2005), regarding a motion brought by the Debtor seeking an order

barring the prosecution of two putative class actions raising trespass claims concerning fiber

optic cable installed pre-petition.  The Court found that the transmission of light pulses was an

intangible trespass and that the law of both relevant states, Kansas and Alabama, required a

showing of damage separate and distinct from the installation of the cable itself to maintain an

action for intangible trespass.  In *In re WorldCom,* the plaintiffs could not demonstrate that such

injury occurred, thus, they did not establish a claim for intangible trespass.  Georgia, however, as

will be discussed herein, does not describe non-physical invasions by the term "intangible"

trespass as that term is used in *In re WorldCom*.  Georgia describes such "intangible" trespass as

not having physical characteristics or as not being physical in nature.  However, the analysis

under both Georgia and *In re WorldCom* appear to be identical in that in order to establish an

"intangible" trespass a showing of damages separate and distinct from the "intangible thing"

must be shown.

     West in support of his contention that the transmission of light pulses constitutes a

continuing trespass cites to *City of Shawnee, Kansas v. AT&T Corp.*, 910 F. Supp. 1546 (D. Kan.

1995), *Ward v. McGlory*, 358 Mass. 322 (Ma. 1970) and *Chatham v. Clark Laundry, Inc.*, 191

S.E.2d 589 (Ga. Ct. App. 1972).  West asserts that these cases distinguished between the

installation of the cable and the use of it providing for two separate causes of action; (1) for the

installation of the object as a permanent trespass, and (2) for the use of the cable – by the

transmission of pulses through the owner's land – as a continuing trespass.  In *In re WorldCom*,

the plaintiffs brought forth similar arguments under both *Shawnee* and *Ward.*

     In *Shawnee*, the court ruled that "[a]lthough incorporeal electronic signals do not

necessarily come immediately to mind when one thinks of a 'thing,' the invasion of Shawnee's

right to control the use of its property is not less real because the offending item is intangible . . .

.  Thus, the court concludes that the Kansas Supreme Court would consider each signal of

information that AT&T sends through the cable a new trespass."  *Id.*, 910 F. Supp. at 1561-62.

The court in *Shawnee*, without further reference to the intangible nature of the trespass ruled that

the continued transmission of light signals through the fiber optic cable constituted a continuing

trespass. Further, by denying summary judgment on the issue of the statute of limitations which had expired on any alleged permanent trespass, the court apparently found that the issue of damages was not a necessary element of establishing the trespass but only relevant to the amount of any damages. The *Shawnee* court limited its ruling to whether to dismiss the claim based on the statute of limitations and not whether the plaintiff may be entitled to any damages.

The court in *Ward v. McGlory*, 358 Mass. 322 (Mass. 1970), ruled that "[a]lthough [the Defendant] did not install the wires or the poles, the act of connecting the wires to their source of power and continuously transmitting electricity was an affirmative voluntary intrusion onto the plaintiff's property. It is not necessary that the electric current cause damage to or come in contact with the land." *Id.* at 325-236. The court in *Ward* held that a transmission of an electrical current is distinct from the conduit through which it passes. Even though the defendant had not been responsible for the physical trespass by the wires, they were responsible for a trespass because they sent electric current through those wires. *Id.* (ruling that the erection of ten-foot poles and wires was outside the scope of an original road access easement granted to the easement holder and the defendant's transmission of electricity through such wires was a continuing trespass). The *Shawnee* court acknowledged that the signals were an intangible trespass, yet did not discuss that aspect in its analysis. Neither *Ward* nor the case relied upon by that court addressed the nature of the invasion (as tangible or intangible).[9]

---

[9] Like *Shawnee*, the *Ward* court relied on a case dealing with a tangible trespass in order to illustrate that the electricity did not have to contact or damage the land to be considered a trespass. In its decision, the *Ward* court compared the invasion by the electrical current to the invasion in *Smith v. New England Aircraft Co.*, 270 Mass. 511 (Mass. 1929) which stated that no physical damage need come to the property in order to be a trespass and ruled that low flying planes could be considered as trespassing onto the plaintiff's land. However, the *Smith* court also noted that because of the "noise and by the presence of the aircraft and its occupants" its invasion cannot be minimized. *Id.* at 530. Although the court in *Smith* did not discuss whether it was a tangible trespass, the court was concerned with the physical presence of the planes in the airspace, which suggests that this was viewed as a tangible invasion.

   The *Ward* court, in it discussion of *Smith*, draws no distinction between tangible and intangible trespasses. Further, the Debtor suggests, and the Court agrees, that the decision in *Ward* may reflect that court's consideration of the potential harm associated with the electric current at issue in that case. If this were the case, treatment of

22

This Court must determine how the Georgia Supreme Court would rule on the issue before the Court and whether it would follow the analysis in *Shawnee* and *Ward*. It should be noted that in *Shawnee*, AT&T did not brief the issue of whether a light signal is considered a trespass under Kansas law. *Shawnee*, 910 F. Supp. at 1561. As referenced above, the court in *Shawnee* did not address the evolving view of trespass under Kansas and other state's laws when considering an intangible trespass even though it had identified the trespass at issue as an intangible one. The changing definition of trespass is responsible for allowing intangible invasions to be recognized as trespass; and this changing definition clearly requires damage to the *res*. *See Maddy, supra.*

Under Kansas law, in cases of tangible trespasses damages are presumed while in cases of intangible trespass damages must be demonstrated. *Id.* In fact, the only case that the *Shawnee* court relied on is *Ward*, which is a Massachusetts case that does not discuss the intangible nature of the invasion.[10] This Court, therefore, agrees with the determination that the light signals are "intangible," however, it disagrees with the analysis and ultimate conclusion reached in *Shawnee*. Inasmuch as that court found that the signals constituted an intangible invasion, it did not follow applicable Kansas law regarding alleged intangible trespasses, which requires damages to the *res* to establish the trespass.

---

electric current and low flying planes as a trespass implicating a potential harm would have more analytical support. However, any concern over potential harm regarding electric current that may have been considered in *Ward* would not be present regarding the light signals at issue herein.

[10] Massachusetts cases have not specifically focused on the elements of an intangible trespass. However, at least one Massachusetts case suggests that such an intangible invasion must cause damage to the property in order to constitute a trespass when it ruled, "[a] landowner who sets in motion a force which, in the usual course of events, will damage the property of another is guilty of a trespass on such property." *Sheppard Envelope Co. v. Arcade Malleable Iron Co.*, 335 Mass. 180, 187 (Mass. 1956) (upholding the lower court's decision to grant a claim for trespass based on pollutants from the defendant's foundry that entered the plaintiff's land because the damage to the plaintiff's land was substantial enough to constitute a trespass). Nevertheless, Massachusetts courts do not seem to place the same emphasis on the nature of the trespass as other states do. The Massachusetts courts' approach appears to be the minority view.

West cites to dicta in *Chatham, supra,* describing *Savannah Electric & Power Co. v. Horton*, 162 S.E. 299, 300 (Ga. Ct. App. 1932) as a case "involving 'electric current which recreates the trespass constantly by running through the wire. Thus, while erecting the wire may be a one-act trespass, it is the constant use and control of the current which creates a continuing and repeated trespass." *Chatham*, 191 S.E.2d at 590. West cites to *Chatham* to support his proposition that the transmission of light pulses through the fiber optic cable constitutes a continuing trespass.

In *Horton*, an electric company attached certain brackets or supports for wires to an outer wall of the plaintiff's brick garage, which was used by the company to convey electricity to customers in the vicinity. The wall cracked and bulged, and the plaintiffs sued the electric company for the damage. On appeal, the court held that the evidence authorized the finding that the penetration of the wall with the 20-penny nails with which the brackets or supports were fastened to the building, and the constant swaying of the wires by the wind during a long period resulted in the cracking and damage. The Court agrees with the Debtor in that the court in *Chatham* misinterpreted *Horton's* holding. The *Horton* court affirmed a judgment that the electric company committed a continuing trespass due to the brackets or supports for wires attached to the plaintiff's garage, not on the continuous transmission of electrical current within the wires. Thus, *Chatham* does not provide the Court with guidance as to the issue before the Court.

As stated previously, while other states make a distinction between tangible and intangible trespass, Georgia does not appear to articulate such a distinction. The Court believes that the prevailing view in Georgia regarding claims of trespass is *Jordan v. Georgia Power Co.,* 219 Ga. App. 690 (Ga. Ct. App. 1995). Under Georgia law, it appears that a physical invasion

onto property constitutes a trespass without injury. However, it appears that an invasion that does not have "physical" characteristics requires physical injury in order to establish a trespass. *See id.* In *Jordan*, the plaintiffs brought an action against the defendant corporation for damages arising from electromagnetic radiation on their property. The plaintiffs allege that the defendant corporation installed power lines on an easement next to their property, and such power lines allegedly began to emit electromagnetic radiation onto their property at unreasonably dangerous levels, which rendered the property unsafe and caused the development of non-Hodgkin's lymphoma in one of the plaintiffs.

The Superior Court in *Jordan* concluded that electromagnetic fields "were not tangible as defined by law for the purpose of trespass determinations." *Id.* at 694. The Superior Court further stated, "in Georgia a physical invasion of some kind is required in order to state a cause of action for trespass. There has been no physical injury to the real estate alleged. There has been no physical entry alleged. The plaintiffs allege there is a detectable entry by non-tangible magnetic fields. However, such fields are not tangible as that term is defined by law for the purpose of trespass determinations." *Id.* The Georgia Court of Appeals in *Jordan* affirmed the Superior Court's holding on this point and concluded that "[t]he scientific evidence regarding whether [electromagnetic fields] cause harm of any kind is inconclusive; the invasive quality of these electric fields cannot presently constitute a trespass." *Id.*, 219 Ga. App. at 694-95. The *Jordan* court, however, stated that "[i]n reaching this conclusion, we do not close the door on the possibility that science may advance to a point at which damage from [electromagnetic fields] is legally cognizable and a trespass action may lie." *Id.* at 695.

The transmission of laser generated light pulses through fiber optic cable is analogous to the transmission of electromagnetic fields through power lines in that they are not tangible in

nature; and, thus, are not physical invasions on property as that term has been defined in Georgia. Here, West has not alleged any physical injury to the real estate nor has West alleged that there has been any physical entry onto the land. As with electromagnetic fields, the invasive quality of the laser generated light pulses and the lack of conclusive harm cannot presently constitute a trespass under the prevailing view in Georgia.

Based upon the foregoing, Georgia law requires a plaintiff to establish either a physical invasion or if the invasion is not "physical" that there be legally cognizable damage to establish a claim for trespass. West has not asserted any physical invasion as Georgia law defines that term, nor has West established any legally cognizable damages as a result of the light signals. Therefore, West has failed to establish any trespass resulting from the transmission of light signals; and, hence, cannot establish a continuing trespass. Accordingly, any claim that would result from the installation of the cables, including their continuous use, would be limited to damages resulting from an alleged permanent trespass.[11]

The Court's conclusion that West's cause of action is grounded in an alleged permanent trespass and not a continuing one is supported by *Spar v. Pacific Bell*, 235 Cal. App. 3d 1480 (Cal. Ct. App. 1991). In *Spar*, plaintiffs brought suit against a telephone company for trespass and nuisance based on the existence of telephone lines and equipment that they had buried under the plaintiffs' property twenty-five years earlier. The California state appellate court held that the damages were permanent in nature because "it is difficult to imagine a more permanent encroachment than a telephone conduit buried 10 feet in the earth for approximately a quarter of a century, which is designed to have a useful life of 100 years." *Id.* at 1487. The California court did not differentiate between the cables themselves and any transmissions that passed through them. Here, the purpose of laying the fiber optic cable was to transmit light signals; the

---

[11] *See supra* note 6.

conduit and the transmissions are inexorably linked.  West has not shown that there is any

present harm or even the potential of any harm due to the "trespass" of the light signals nor has

he demonstrated why such signals should be considered independently from the conduit, which if

it is a trespass, is a permanent trespass.  In fact, there is no clear allegation of any impact of the

alleged "trespasses" on his property except for the benefit that the Debtor is deriving from the

fiber optic cables' use.  As a result, the presence and continued use of the cable would constitute

a permanent trespass that arose pre-petition, as stated previously.

Therefore, any cause of action related thereto was a "claim" pursuant to 11 U.S.C. 101(5)

of the Bankruptcy Code.  Accordingly, any liability resulting therefrom for past, present, and

future damages has been discharged pursuant to 11 U.S.C. 1141(d)(1)(A) and the Confirmation

Order.  Furthermore, such discharge would be an injunction against the commencement and

continuation of any such cause of action pursuant to 11 U.S.C. § 524(a)(2) and the Confirmation

Order.  Thus, the Court grants summary judgment in favor of the Debtor with respect to this

issue.

### 2.  Unconstitutional Taking

West maintains that he has a constitutional right as a landowner to exclude those that he

chooses from his property.  Further, since the Debtor's equipment is on West's land without his

consent, he has a right to seek an injunction.  In addition, West asserts that the Debtor has

committed an unconstitutional taking of his property without just compensation in violation of

the constitutions of the United States and Georgia.  West further argues that the Plan did not state

that the reorganization would provide the Debtor with some form of property interest on the land.

The Debtor maintains that West's constitutional rights were not violated.  The Debtor

asserts that since it is a public utility company it has the power to take the land by condemnation,

thus, West never has had the right to seek an injunction of the fiber optic cable. The Debtor further asserts that although it has not yet exercised its condemnation powers, it will exercise such power if faced with an adverse ruling with respect to its right to occupy the land. Also, the Debtor maintains that West's claim for an injunction arose pre-petition, because the claim does not turn on whether or not the Debtor actually condemned the land, but on whether the fiber was installed without West's permission, which occurred pre-petition. Therefore, such claim was discharged upon the Effective Date. The Debtor argues that the fiber optic cable would remain subject only to the obligation to compensate West. Lastly, the Debtor contends that West had an opportunity to obtain compensation by filing a proof of claim with the Court, but waived such right by not filing a proof of claim.

In response, West argues that such claim did not arise pre-petition, because the Debtor has yet to exercise its right to condemnation. Further, in order for the Debtor to take the land, it would first have to follow the constitutional requirements of both the United States and Georgia, and that in Georgia, you have to seek to take the property and pay value before a taking can occur, none of which has happened here. Therefore, West argues that the right to payment has not arisen. Lastly, West argues that even if the Debtor exercised its right to condemnation during the bankruptcy proceeding, the Court would have to order the Debtor to comply with the statute by first paying West just compensation, but that West cannot be paid in bankruptcy dollars because that would not be just compensation. To that argument, the Debtor states that there is no case law to support such a proposition.

"The Fifth Amendment to the United States Constitution precludes the taking of private property for public use without just compensation. If a state provides an adequate procedure for seeking just compensation, a property owner cannot assert a claim under the Just Compensation

Clause until it has used the state procedure and has been denied just compensation." *Benton*, 241

Ga. App. at 538 (citing *Williamson County Reg'l Planning Comm. v. Hamilton Bank*, 473 U.S.

172, 195 (1985)).  Under Georgia law "private property shall not be taken or damaged for public

purposes without just and adequate compensation being first paid."  Ga. Const., Art. I, § III,

Para. 1.  Georgia law provides a procedure for obtaining compensation when one's property is

taken for public use.  "Where property has been taken or damaged, for public purposes, by public

authorities or a quasi public corporation, the party injured, being entitled under the [c]onstitution

. . . to 'just and adequate compensation,' may bring one action therefor, within the time required

by state of limitations . . . ."  *Ga. Power Co. v. Moore*, 47 Ga. App. 411, 413 (Ga. Ct. App.

1933).  "[I]n determining whether [p]laintiff filed its article I, section 3, paragraph 1 claim within

the statute of limitations, the relevant time is the date upon which the taking occurred."

*Provident Mutual Life Ins. Co. of Phila. v. City of Atlanta*, 864 F. Supp. 1274, 1282 (N.D. Ga.

1994).  As stated previously, the statute of limitations relating to actions for trespass upon or

damage to realty shall be brought within four years after the right of action accrues.  GA. CODE

ANN. § 9-3-30 (2004).

> The Georgia Court has repeatedly held that

> > The owner of a fee of a highway who permits an electric power company to construct its line along the highway, without bringing an action to prevent it until after the public service has begun, will be granted damages only for the invasion of his rights, and cannot require removal of the line.  *Gurnsey v. Northern Ca. Power Co.,* 160 Cal. 699 (Cal. 1911).  This is a reasonable rule, and sound in principle. It does not proceed in the interest of the company unlawfully appropriating the land, nor on the ordinary theory of estoppel as where a landowner stands by and without warning sees another in good faith place expensive improvements on the premises. A public utility company, having the right of eminent domain, that knowingly takes land without lawful method for its corporate purposes, could hardly be said to be acting in good faith; and it is difficult to find estoppel working against the owner in

favor of the company under such circumstances. The operation of the rule has for its basis more than ordinary estoppel. It works for the good of the public. A public utility company has the right to acquire land necessary for its corporate purpose. Such may be acquired by purchase, by consent of the owner, or by condemnation, but cannot lawfully be taken against the consent of the owner without compensation. The right to the owner, by whatever method the land is taken, is compensation, which right he may expressly or by inaction waive. He may by inaction waive his right to the land. Where electric and power lines are established that furnish light and power to the public, all alike, including business and industry of all kinds, the factory, shop, store, transportation, the citizen, private and corporate, church and school, and the home itself, become dependent on the service for their individual and general welfare. If a landowner stands by and permits without legal objection, a public utility company to appropriate his land to its necessary corporate use until such becomes a necessary and constituent part of its service to the public, and the rights of the public intervene to such extent that to oust the company would interrupt the service and deny it to the public, *the landowner, not for the protection so much of the company but for the benefit of the public, will be estopped from recovering the land in ejectment or from enjoining its use for the service, but will, if he moves in time, be remitted to an appropriate action for damages.* The rule is not unfair to the owner of the land. If the land be taken without his consent and without condemnation, a right of action accrues to him against the company. His measure of damage and the amount of his award is the same, whether the land be acquired in condemnation proceedings timely and properly instituted, or whether the land be illegally appropriated and the compensation be fixed in an action against the company for the unlawful taking. The only difference to the landowner is one of remedy. The medicine is not the same, but the cure is equally effectual; and the landowner in either event has his remedy without interrupting the service, to the inconvenience of the social and business life of the community. The only effect on the landowner is that by his own inaction he deprives himself of his remedy by injunction or ejectment, but the remedy afforded him is adequate.

*Waldrop v. Ga. Power Co.*, 233 Ga. 851, 852-54 (Ga. 1975) (emphasis added) (citing *Ga. Power Co. v. Kelly*, 182 Ga. 33, 37-39 (Ga. 1936)); *see also Montgomery v. City of Sylvania*, 189 Ga. App. 515, 518-19 (Ga. Ct. App. 1988).

Here, West alleges that the Debtor has taken his property without just compensation, and

also seeks an injunction.  In essence, under Georgia law (as stated in the excerpt above) West

would not be entitled to an action for an injunction, but may only be awarded monetary damages,

if he initiates such a proceeding in a timely manner.  Assuming that the Debtor has taken West's

property without providing him with just and adequate compensation, any such cause of action

would accrue from the time the taking occurred.  The alleged taking, here, would have accrued

upon the installation of the fiber optic cable in 1986, resulting in a pre-petition claim.[12]

Based upon the above, any cause of action related thereto was a "claim" pursuant to 11

U.S.C. 101(5) of the Bankruptcy Code.  Therefore, any liability resulting therefrom for past,

present, and future damages has been discharged pursuant to 11 U.S.C. 1141(d)(1)(A) and the

Confirmation Order.  Furthermore, such discharge would be an injunction against the

commencement and continuation of any such cause of action pursuant to 11 U.S.C. § 524(a)(2)

and the Confirmation Order.  Thus, based upon the above, the Court grants the Debtor summary

judgment with respect to this issue.

### 3.  Unjust Enrichment

West also argues that he intends to bring an action for unjust enrichment for the Debtor's

post-discharge benefit of using the fiber optic cable on his property.  The Court finds that West's

claim for unjust enrichment is dependent upon this Court finding that the presence or

maintenance of the fiber optic cable or that transmission of light pulses through the cable is a

continuing trespass.  Based upon the Court's determination that West has not established that the

presence or maintenance of the cable or that the transmission of the light pulses is a continuing

---

[12]   The Court notes that any cause of action based upon the Debtor's alleged taking without providing West with
just and adequate compensation appears to be time barred.

trespass under Georgia law, any claim for unjust enrichment would be related to the permanent

trespass, which arose pre-petition.[13]

Therefore, any cause of action related thereto was a "claim" pursuant to 11 U.S.C. 101(5)

of the Bankruptcy Code.  Accordingly, any liability resulting therefrom for past, present, and

future damages has been discharged pursuant to 11 U.S.C. 1141(d)(1)(A) and the Confirmation

Order.  Furthermore, such discharge would be an injunction against the commencement and

continuation of any such cause of action pursuant to 11 U.S.C. § 524(a)(2) and the Confirmation

Order.  Thus, the Court grants the Debtor summary judgment with respect to this issue.

### IV.  Conclusion

As stated previously, the Court has assumed, for purposes of this Opinion, that West

owns a fee interest in the subject railroad rights of way, and his consent for the installation of the

fiber optic cable was required.  Based on its analysis, the Court concludes that (1) any causes of

action West may have against the Debtor relating to trespass, continuing trespass, unjust

enrichment and unconstitutional taking from the post-Effective Date presence of fiber optic cable

installed prior to the Effective Date along railroad rights of way constitutes a "claim," as that

term is defined in 11 U.S.C. § 101(5), (2) any liability on the causes of action relating to trespass,

continuing trespass, unjust enrichment and unconstitutional taking has been discharged pursuant

to 11 U.S.C. 1141(d)(1)(A) and the Confirmation Order, and (3) such discharge operates as an

injunction against the commencement or continuation of any such actions at law or in equity

arising out of the post-Effective Date presence of fiber optic cable installed prior to the Effective

Date along railroad rights of way pursuant to 11 U.S.C. § 524(a)(2) and the Confirmation Order.

Therefore, the Debtor's Motion for Summary Judgment is granted.

---

[13] *See supra* note 6.

The Debtor is to settle an order consistent with this Opinion.


Dated:  July 20, 2005
        New York, New York

                                 *s/ Arthur J. Gonzalez*
                                 UNITED STATES BANKRUPTCY JUDGE